IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JUSTIN L. BRADLEY,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | **8:25CV557**<br><br>**MEMORANDUM AND ORDER** |

This is an action under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff Justin L. Bradley's ("Bradley") application for disability insurance benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq.* Now before the Court are Bradley's Motion for an Order Reversing the Commissioner's Decision (Filing No. 13) and the Commissioner's Motion for an Order Affirming the Commissioner's Decision (Filing No. 14). Because there is substantial evidence to support the denial of Bradley's application for benefits, the Court affirms the Commissioner's decision.

## I. BACKGROUND[1]

Born in 1983, Bradley has a high-school education and has completed four years of classes at Metropolitan Community College in Omaha, Nebraska. He has worked at a grocery store and various fast-food restaurants. But he stopped working after suffering numerous seizures on and off the job, which limited his ability to find and maintain work.

The seizures began in 1999 when, around the age of 16, Bradley slipped and hit his head on pavement. That fall left him unconscious on the side of the road for forty-five minutes. The seizures started about nine months later. Bradley experienced "generalized tonic-clonic seizures" about twice a year through October 2003. His treating neurologist

[1]The Commissioner has accepted (Filing No. 15) Bradley's description of the material facts (Filing No. 13).

at the time, Jan Golnick, M.D. ("Dr. Golnick"), diagnosed him with "complex partial epilepsy, Arnold Chiari malformation, and a history of closed head trauma."

The medical records from this period are sparse. After the 2003 records from Dr. Golnick, the next one is dated April 12, 2013. In that record. Dr. Golnick notes Bradley is "seen routinely every six months regarding complex partial epilepsy" and "has had no break-through seizures" (Filing No. 9-7). The very next record, dated October 4, 2013, states that Bradley "has had no seizure activity in approximately four years" (Filing No. 9-7). Despite doing well, Dr. Golnick cut Bradley's Keppra prescription in half at that appointment due to its high cost.

Reducing Bradley's medication exacerbated his seizures. Two months later, Bradley experienced a twenty-minute seizure with tongue biting and convulsions. Records show Bradley experienced at least four grand mal seizures between 2013 and 2014. And in the years that followed, Bradley's treating providers have documented that he continues to experience grand mal seizures, despite compliance with Keppra (Filing Nos. 9-7, 13).

On July 27, 2022, Bradley filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning on January 1, 2009, due to epilepsy with seizures. Based on his earnings record, Bradley last met the insured status requirements of the Social Security Act on September 30, 2013 (the "date last insured").

His claim was initially denied on April 6, 2023, and upon reconsideration on August 7, 2023 (Filing No. 9-3). After Bradley filed a written request for a hearing, an Administrative Law Judge ("ALJ") held one on June 5, 2024, in Omaha, Nebraska. Bradley testified at the hearing with his attorneys present. Shortly after that hearing, on July 11, 2024, the ALJ issued an unfavorable decision, finding that Bradley was not disabled under the Act from the alleged onset date through the date last insured. The Appeals Council denied review, making the ALJ's hearing decision "the final decision of

the Commissioner." *Whitman v. Colvin*, 762 F.3d 701, 705 (8th Cir. 2014); *see* 20 C.F.R. § 404.984(b)(2).

Bradley then filed this action, seeking judicial review of the Commissioner's final decision under 42 U.S.C. § 405(g). *See Smith v. Berryhill*, 587 U.S. 471, 478, 480-81 (2019). As he sees it, the ALJ "failed to apply proper legal standards" and rendered a decision that "is unsupported by substantial evidence." First, he alleges the ALJ failed to properly evaluate his epilepsy under Listing 11.02, 20 C.F.R. Pt. 404, Subpt. P, App. 1. Second, he claims the ALJ improperly dismissed his testimony and a statement by his mother. And third, he argues the vocational testimony failed to carry the Commissioner's burden of proof at the final step in the evaluation process.

## II. DISCUSSION

### A. Standard of Review

The Court must affirm the ALJ's denial of benefits if the "ALJ made no legal error" and the decision "is supported by substantial evidence on the record as a whole." *Bonham v. Bisignano*, 177 F.4th 934, 940 (8th Cir. 2026) (quoting *Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021)). That holds true even if this Court would have reached a different conclusion than the Commissioner, *see Wiese v. Astrue*, 552 F.3d 728, 730 (8th Cir. 2009), and "substantial evidence could have been marshaled in support of a different outcome," *Myers v. Colvin*, 721 F.3d 521, 524 (8th Cir. 2013) (quoting *England v. Astrue*, 490 F.3d 1017, 1019 (8th Cir. 2007)). Substantial evidence "is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Bonham*, 177 F.4th at 940 (quoting *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012)).

### B. Eligibility for Benefits

Bradley must be disabled under the Act to qualify for benefits. *See* 42 U.S.C. § 423(a)(1)(E). To show disability, he must demonstrate "inability to engage in any substantial gainful activity" due to a "medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected

to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A). Bradley is disabled under the Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423(d)(2)(A).

"To be eligible for disability insurance benefits under Title II, [Bradley] must also meet Title II's 'earning requirement.'" *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) (citing 42 U.S.C. § 423(c)(1)(B)). As noted above, the ALJ found, and Bradley does not dispute, that he last met this requirement on September 30, 2013. Therefore, the Court "will only consider" whether he was disabled "as of the date [he] was last insured." *Id.*; *see also Turpin v. Colvin*, 750 F.3d 989, 993 (8th Cir. 2014) (noting that "[i]f an applicant for disability benefits is not insured for Title II purposes," courts "only consider the applicant's medical condition as of his or her date last insured").

### C. The Five-Step Process

To determine whether a claimant qualifies for benefits, the ALJ runs through a familiar five-step checklist. *See* 20 C.F.R. § 404.1520. Steps one through three require Bradley to prove (1) he is not currently engaging in "substantial gainful activity," (2) he suffers from a "severe medically determinable physical or mental impairment," and (3) his impairment "meets or equals" a listed impairment. *Id.* § 404.1520(a)(4)(i)-(iii).

If Bradley has a severe impairment but does not clear step three, the analysis proceeds to steps four and five to decide whether he retains the residual functional capacity ("RFC")[2] to perform his past relevant work. *See Simmons v. Massanari*, 264 F.3d 751, 755

[2]A claimant's RFC "is the most [he] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a). It is "based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of his limitations." *Baldwin v. Barnhart*, 349 F.3d 549, 556 (8th Cir. 2003). "[I]t is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016).

(8th Cir. 2001); 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(5)(i). If so, he is not disabled. *See* 20 C.F.R. § 404.1520(a)(4)(iv). If not, the burden of production shifts to the Commissioner at step five "to prove that there are other jobs in the national economy that the claimant can perform" given his age, education, and work experience. *Simmons*, 264 F.3d at 755; *see also* 20 C.F.R. § 404.1520(a)(4)(v). If Bradley can adjust to other work, he is not disabled; if he cannot and meets the duration requirement, he is disabled. *See* 20 C.F.R. § 404.1520(a)(4)(v).

**D. The ALJ's Decision**

Looking only at the time between his alleged onset date and date last insured, at the first step the ALJ found that Bradley had not engaged in substantial gainful activity. *See id.* § 404.1520(a)(4)(i). The ALJ next found that Bradley had two severe impairments: Arnold-Chiari malformation and epilepsy. *See id.* § 404.1520(a)(4)(ii). However, at step three, the ALJ found that "through the date last insured, [Bradley] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments" (Filing No. 9-2). *See id.* § 404.1520(a)(4)(iii). Moving on to step four, the ALJ concluded that Bradley had the RFC to perform "a full range of work at all exertional levels" but with specified "nonexertional limitations." (Filing No. 9-2). *See id.* § 404.1569a. And at step five, the ALJ found Bradley was not disabled during the relevant period because "there were jobs that existed in significant numbers in the national economy that [Bradley] could have performed." *See id.* § 404.1520(a)(4)(v).

**1. The ALJ's Evaluation of Bradley's Epilepsy under Listing 11.02**

Bradley first argues that the ALJ failed to properly evaluate his epilepsy under Listing 11.02, given that during the year *after* his date last insured, he suffered generalized tonic-clonic seizures more than once a month.

One way Bradley can "meet" Listing 11.02 is by showing that he experienced "[g]eneralized tonic-clonic seizures (see 11.00H1a), occurring at least once a month for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see

11.00C)." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 11.02A. Bradley argues that he can meet this standard if the ALJ considers his seizures in the year *following* his date last insured. In his view, the ALJ "failed to note that Dr. Golnick's notations confirm—during the year immediately following the expiration of [his] insured status—the requisites of Listing 11.02 were satisfied."

The Commissioner argues that evidence of worsening or qualifying seizure frequency after the date last insured does not establish listing-level severity during the insured period. The Court agrees.

Bradley has "to establish [his] being disabled prior to the expiration of [his] insurance to be entitled to disability insurance benefits." *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009). "Thus, the relevant time period" is from January 1, 2009, his "alleged disability onset date," until September 30, 2013, his "insurance expiration date. *Id.* That is precisely the period ALJ considered in this case. And after considering the relevant period, the ALJ concluded evidence did not support listing-level epilepsy.

Bradley's argument that the ALJ failed to consider the year following his date last insured is unavailing. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, 11.00H(4) ("The required number of seizures must occur within the period we are considering in connection with your application or continuing disability review."). Evidence that Bradley's seizures worsened after his date last insured doesn't establish disability before that date. *See Turpin v. Colvin*, 750 F.3d 989, 994-95 (8th Cir. 2014) (noting that worsening health in subsequent years "does not demonstrate disability during the time period relevant to [a] claim").

What's more, substantial evidence supports the ALJ's finding that Bradley's impairments failed to meet or medically equal Listing 11.02 before his date last insured. A note from Dr. Golnick in April 2013 showed that Bradley was "seen routinely every six months" and had "no break-through seizures" (Filing No. 9-2). And due to the scarcity of

medical records, the ALJ did consider evidence outside of relevant period (Filing No. 9-2). But those records did Bradley no favors. An October 2013 record from Dr. Golnick confirmed that Bradley "had had no seizure activity in approximately four years" (Filing No. 9-2).

Bradley points to records documenting grand mal seizures on December 20, 2013, June 23, 2014, August 15, 2014, and August 31, 2014. He also directs the Court to records from other providers such as Pamela M. Santamaria, M.D., Christopher J. Buckley, M.D., and Shelley Lee, D.O., documenting seizure activity from 2016 through 2024. This misses the point. Contemporaneous records from the relevant period support that Bradley had "no seizure activity" (Filing No. 9-2). The fact that Bradley's health may have worsened in subsequent years "does not demonstrate disability during the period relevant to [his] claim. *Turpin*, 750 F.3d at 995.

### 2. Bradley's Mother's Statement

Bradley next argues that the ALJ "improperly dismissed" his testimony and the third-party statement of his mother, Georgia Lewis ("Lewis"). The ALJ took judicial notice of Lewis's statement, reviewed it, and considered it. Ultimately, that letter failed to move the ball in any way. The ALJ explained that a "close reading" shows Lewis's letter "does not mention any seizures specifically from the time of the alleged onset date in 2009 through the date last insured in 2013" (Filing No. 9-2). Not only did the ALJ explain that Lewis's narrative was "not relevant" to the "period at issue," but he plainly considered it against Bradley's treatment notes. The ALJ explained that Bradley's treatment notes "clearly state that he did not have any seizures in the months preceding the date last insured and only one in the month just after the date last insured" (Filing No. 9-2). He concluded that Lewis's statement "cannot serve as the basis for a finding of disability" given that the medical evidence "does not support such a finding." *Cf.* 20 C.F.R. 404.1527 (noting that the determination of disability rests with the Commissioner). "Despite [Bradley's] dissatisfaction with how the ALJ weighed the evidence, it is not this Court's role to reweigh that evidence." *Schmitt v. Kijakazi*, 27 F.4th 1353, 1361 (8th Cir. 2022).

### 3. Bradley's Testimony

Bradley also argues the ALJ failed to point to inconsistencies between the medical evidence in the record and his testimony at the hearing regarding the number of grand mal seizures he experienced during the relevant period. During the hearing, Bradley testified that he continued to have grand mal seizures from 2003 through his date last insured and that there was "no big change" in the number of grand mal seizures he experienced (Filing No. 13). The ALJ concluded, however, that Bradley's "statements concerning the intensity, persistence, and limiting effects of his [seizure-related] symptoms are not entirely consistent with the medical evidence and other evidence in the record" (Filing No. 9-2). Bradley lambasts that conclusion as a "boilerplate statement" which "fail[s] to adequately consider the subjective allegations as agency policy requires" (Filing No. 13). According to Bradley, the ALJ failed to point to "genuine inconsistences between [his] allegations and the other evidence, as required by 20 C.F.R. § 404.1529(c)(4)" (Filing No. 13).

In considering a claimant's subjective complaints, the ALJ may not reject them "based solely on the lack of an 'objective medical basis' for them." *Samons v. Astrue*, 497 F.3d 813, 820 (8th Cir. 2007) (citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)). The ALJ must evaluate whether self-reported symptoms "can be reasonably accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a). In doing so, the ALJ considers the claimant's daily activities; duration, frequency and intensity of the pain or other symptoms; dosage, effectiveness and side effects of medications; any precipitating and aggravating factors; and functional restrictions. *See id.* § 404.1529(c)(3); *Polaski*, 739 F.2d at 1322.

As the Commissioner points out, however, the ALJ is "not required . . . to include a discussion of how every *Polaski* 'factor' relates to the claimant's credibility." *Samons*, 497 F.3d at 820. "It is sufficient if he acknowledges and considers those factors before discounting a claimant's subjective complaints." *Goff v. Barnhart*, 421 F.3d 785, 791 (8th Cir. 2005) (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004)).

After the ALJ stated Bradley's testimony was "not entirely consistent" with the medical evidence in the record, he mentioned the relevant evaluation factors and noted that Bradley's treatment records prior to his date last insured are "extremely limited" (Filing No. 9-2). The ALJ further explained that records from Dr. Golnick dated October 23, 2003, documented that Bradley's "last seizure was on March 18, 2000," and that he had been "seizure-free until approximately two weeks prior" (Filing Nos. 9-2, 9-7). The next medical record from April 2013 notes Bradley "was seen routinely every six months" and "had had no break-through seizures" (Filing Nos. 9-2, 9-7). And at his next follow-up in October 2013, Dr. Golnick indicated that Bradley had "had no seizure activity in approximately four years" (Filing Nos. 9-2, 9-7).

The inconsistency here is plainly evident. It is apparent from the record that the ALJ considered Bradley's subjective complaint that he continued to suffer seizures throughout the relevant period but ultimately found that testimony was "not entirely consistent" with the objective medical evidence in the record. *See Goff*, 421 F.3d at 793 (noting that the ALJ had discredited the claimant's subjective complaints "for good cause" because they were inconsistent with the evidence as a whole"). Bradley's argument that the ALJ "pointed to no genuine inconsistences" between his testimony and the record evidence is meritless.

### 4. The Vocational Expert's National-Economy Data

Finally, Bradley argues that the vocational expert's ("VE") testimony in this case "does not carry the Commissioner's burden of proof at the final step" (Filing No. 13). He gives two reasons for that failure. First, he contends that the record "contains no evidence regarding jobs in the region or in several regions of the country" (Filing No. 13). And second, he asserts that the numbers cited by the VE for jobs in the national economy are inaccurate. The Commissioner counters that substantial evidence supports the ALJ's step-five finding.

Because Bradley had no past relevant work experience, the ALJ had to determine whether he could transition to other work based solely on his age, education, and RFC. *See* 20 C.F.R. § 404.1520(g). That inquiry involves two steps: (1) identifying the types of jobs Bradley could perform despite his impairments, *see id.* § 404.1560(c)(1), and (2) ascertaining whether those jobs existed in significant numbers in the national economy, *see id.* § 404.1560(c)(1).

"For guidance on such questions, ALJs often seek the views of 'vocational experts.'" *Biestek v. Berryhill*, 587 U.S. 97, 100 (2019). "An ALJ may rely on a vocational expert's testimony as long as some of the identified jobs satisfy the claimant's residual functional capacity." *Grable v. Colvin*, 770 F.3d 1196, 1202 (8th Cir. 2014).

At Bradley's hearing, the ALJ asked the VE to assume a person without any past relevant work experience or exertional limits and to identify jobs that person could do which do not require "exposure to hazards such as climbing ladders, work[ing] at unprotected height, operating motor vehicles, or working near dangerous and unguarded moving machinery" or "exposure to wetness, vibration, fumes, or dust" (Filing No. 9-2). Based on the VE's testimony, the ALJ found that Bradley could perform the jobs of "order clerk," "call-out operator," and "election clerk" and that those jobs "existed in significant numbers in the national economy" (Filing No. 9-2). The VE also testified that in the national economy, there were approximately 120,000 order-clerk jobs, 60,000 call-out operator jobs, and 18,000 election-clerk jobs (Filing No. 9-2).

"The [VE] is only required to state his opinion as to the number of jobs available in the national economy[.]" *Whitehouse v. Sullivan*, 949 F.2d 1005, 1007 (8th Cir. 1991); *see* 42 U.S.C. § 423(d)(2)(A) (explaining that a claimant is disabled "only if" his impairments prevent him from doing substantial gainful work "which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives").

Bradley asserts the ALJ erred because the record "contains no evidence regarding jobs in the region" and the ALJ "asked no questions regarding jobs in the region or in several regions of the country" (Filing No. 13). But Bradley has not cited—and the Court has not found—any controlling case law supporting this position. Bradley cites one case from another judge in this district who merely notes that while it would be "preferrable" for ALJs to elicit testimony regarding regional numbers, VE testimony regarding jobs in the national economy is "sufficient to satisfy the Commissioner's burden." *Alice T. v. Kijakazi*, 8:21CV14, 2021 WL 5302141, at *17 (D. Neb. Nov. 15, 2021). That case not only adds no support to Bradley's argument, it undermines it.

**5. Accuracy of the VE's Job Numbers**

Bradley next challenges the VE's job numbers as inaccurate and argues they cannot constitute substantial evidence. He points to results he obtained from "SkillTRAN's Job Browser Pro—the software typically used by VEs in Social Security disability hearings" to argue that the three positions total "only 11,564 jobs" nationwide (Filing No. 13).

That argument goes nowhere. As a threshold matter, those figures are not properly before the Court. Bradley's counsel did not object to the VE's opinions during the hearing or even inquire into her supporting data. Nor does Bradley mention any attempts to submit written objections to the VE's testimony after the hearing or provide his additional data to the Appeals Council for consideration. *See, e.g.*, *Turner v. Saul*, 4:18-CV-607-RLW, 2019 WL 4246841, at *4 (E.D. Mo. Sept. 6, 2019) (refusing to consider materials that were not before the ALJ); *Tim J. S. v. Saul*, 4:19 CV 1709 (JMB), 2020 WL 1888820, at *7 (E.D. Mo. Apr. 16, 2020) (same); *Lovett v. Saul*, 4:19-CV-2126-JAR, 2020 WL 1984014, at *4 (E.D. Mo. Apr. 27, 2020) (noting that because the claimant's counsel "had ample opportunity to cross-examine the VE during the hearing," raising objections to the VE's data post-hearing is improper). Bradley's contention that he is entitled to remand in this case based on job-software results he never presented to the Commissioner is unpersuasive. *See Whitman*, 762 F.3d at 710 (explaining that to warrant remand under § 405(g) based on

new evidence, a claimant must show, among other things, "good cause for the failure to incorporate such evidence into the record in a prior proceeding").

Even on the merits, Bradley's challenge fails. Under *Biestek*, whether VE testimony counts as substantial evidence is a "case-by-case" inquiry that "takes into account all features of the [VE's] testimony, as well as the rest of the administrative record" and "defers to the presiding ALJ" who ran the hearing. 587 U.S. at 108. And "a vocational expert's testimony may count as substantial evidence even when unaccompanied by supporting data." *Id.* at 105. Here, the VE testified that she obtained data from "the Bureau of Labor Statistics most recent publications in May 2022" (Filing No. 9-2). Just because the VE's job numbers purportedly do not mirror the results from the software that is "typically used" does not strip the testimony of its status as substantial evidence. *Cf. Biestek*, 587 U.S. at 108; *Cerveny v. Saul*, 8:19CV541, 2020 WL 4260521, at *5 (D. Neb. July 24, 2020) ("Counsel identifies no authority stating that a VE's job-number estimates cannot be considered substantial evidence of jobs existing in significant numbers in the national economy . . . when the VE does not use the estimation software plaintiff's counsel prefers.").

Finally, nothing about the VE's testimony required the ALJ to inquire further on his own. While an ALJ has a duty to fairly and fully develop the record, *see Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004), nothing about the VE's testimony would have given the ALJ pause or led him to believe a crucial issue was left undeveloped. *Cf. Eichelberger v. Barnhart*, 390 F.3d 584, 592 (8th Cir. 2004) (noting that the burden of persuasion "remains on the claimant" and that the record was sufficiently developed where "no crucial issue was left undeveloped").

Upon thorough review of the record, the Court finds the ALJ made no legal error, and substantial evidence supports the ALJ's decision. *See Bonham*, 177 F.4th at 940. Accordingly,

IT IS ORDERED:

1. Plaintiff Justin L. Bradley's Motion for an Order Reversing the Commissioner's Decision (Filing No. 13) is denied.
2. Defendant Commissioner of Social Security's Motion for an Order Affirming the Commissioner's Decision (Filing No. 14) is granted, and his decision to deny benefits is affirmed.
3. Bradley's Complaint (Filing No. 1) is dismissed with prejudice.
4. A separate judgment will issue.

Dated this 20th day of November 2026.

BY THE COURT:

Robert F. Rossiter, Jr.
United States District Judge